IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAULINE D. TAPIA
and JAMES TAPIA,

                     Plaintiffs,

    vs.                                                    CIVIL NO.  03-25 LFG/WDS

LUNA COMMUNITY COLLEGE et al.,

                     Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [Doc. 17].  The Court has considered the Defendants' motion, together with documents, affidavits and exhibits submitted in support of the motion.  The Court also considered the Plaintiffs' response and specifically notes that Plaintiffs failed to submit any documents, affidavits, exhibits, deposition testimony, answers to interrogatories or any other document in support of their response.  The Court also considered Defendants' reply.  Oral argument is not necessary.  This matter may be resolved based on the parties' submissions.

### Standards for Summary Judgment

       Summary judgment is appropriately entered when a moving party can demonstrate by an affirmative showing of admissible evidence that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).

The party moving for summary judgment must shoulder the initial burden of establishing the absence of a material issue of fact. <u>Adickes</u>, 398 at U.S. 153. That burden is carried when the moving party demonstrates by way of admissible evidence, that is, by deposition testimony, answers to interrogatories, admissions, affidavits submitted in support of the motion, or other documentary evidence that the undisputed facts entitle the moving party to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 106 S. Ct. 2548, 2552 (1986). Once the moving party makes a *prima facie* showing of its entitlement to judgment, the burden shifts to the party opposing the motion to demonstrate the presence of a genuine issue for trial. <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).

The burden does not shift to the party opposing the motion until the moving party makes a *prima facie* showing of entitlement to judgment. Here, Defendants have made such a showing in regard to Plaintiffs' tort claims, and perhaps to the constructive discharge claims, but not to the remaining causes of action.

The undisputed facts of this case are as follows:

1. Until May 2002, Pauline Tapia was employed by LCC in the capacity of Administrative Secretary, having been employed since November 24, 1980.

2. On October 4, 2001, Donna Flores-Medina, Executive Director of Finance and Administration for LCC, wrote a memo to president Leroy Sanchez proposing that Tapia be assigned the additional duty of permanent back up cashier.

3. On October 8, 2001, Flores-Medina wrote to Tapia advising her that the assignment of back-up cashier did not represent an increase in duty beyond her current position and that an increase in pay was not justified.

4.   At the time, Tapia was earning $37,048.00 per year, a salary that far exceeded the LCC compensation schedule for an Administrative Secretary and Cashier.

5.   On October 19, 2001, Tapia submitted a written grievance to Flores-Medina.

6.   In her memo, Tapia requested additional training to handle her additional duties as a part-time backup cashier and compensation for extra and additional duties outside duties required of an Administrative Secretary.

7.   On November 5, 2001, Tapia and Flores-Medina met informally, and on November 12, 2001, Tapia submitted her grievance.

8.   There is no record that Tapia made any further complaints.  As to the grievance she filed, she failed to answer the questions raised in Flores-Medina's memo of November 19, 2001 or to otherwise pursue the administrative grievance procedure.

9.   Tapia submitted a written request for leave without pay, effective May 13, 2002.

10.   LCC President Leroy Sanchez approved Tapia's request for leave without pay on May 16, 2002, and advised her by letter that LCC's Leave Without Pay Policy Number 3.09.05 provides that:

> "LCC does not guarantee your reinstatement and reserves the right to eliminate your position or fill it with another individual.  If your previous position is no longer available and you are not placed in another similar position within a reasonable period, or if you refuse a position which is offered, LCC has no further reinstatement obligations and you will be considered to have voluntarily resigned your employment with LCC."

11.   On July 29, 2002, Tapia submitted a written request to be reinstated.

12.   On July 29, 2002, Rita Garcia, Human Resources Director, advised Tapia by letter that her job had been filled, but that LCC would make a good-faith effort to re-employ her when a position became available.

13.   On August 26, 2002, Nancy Richards, as attorney for Tapia, wrote to Rita Garcia requesting that LCC make "every effort" to reinstate Tapia.

14.   On September 3, 2002, Rita Garcia wrote to Nancy Richards advising her that LCC had regularly encouraged Tapia to apply for any position which might become available and that LCC would give favorable consideration for her years of service at LCC.

15.   On September 5, 2002, Rita Garcia sent Tapia three Position Announcements.

16.   On September 20, 2002, Rita Garcia sent Tapia a Position Announcement for Bookstore Manager.

17.   On September 26, 2002, Nancy Richards advised Garcia that Tapia was declining to interview for the position of Caregiver Aide, but did want to apply for the Bookstore Manager position.

18.   On October 4, 2002, LCC President Leroy Sanchez offered Tapia the position of Assistant Bookstore Manager at an annual pay rate of $23,137, plus benefits.

19.   By letter dated October 8, 2002, Tapia, through her attorney, declined to accept the position of Assistant Bookstore Manager.

20.   The Preface to the Professional and Support Staff Handbook provides:

> All statements contained in the Professional and Support Staff Employees Handbook are intended to reflect general policies, procedures, and practices and do not represent contractual commitments on the part of the Institute nor do they grant a right to any employee to be continued as an employee at Luna Vocational Technical Institute (now known as LCC).

21.   The Handbook states at Section 3.02.01:

> There shall be no commitment expressed or implied to renew the appointment of any employee beyond the expiration date of the appointment.  If no expiration date is given in a person's appointment,

4

the expiration date shall be the last day of the fiscal year unless otherwise stated in writing.

**Tort Claims**

Defendants seek to summarily dismiss Plaintiffs' tort claims contending that there is no waiver of immunity for the causes of action pled.  Defendants identify as torts Count I of Plaintiffs' complaint, Constructive Discharge; Count V, Breach of Covenant of Good Faith and Fair Dealing; and Count VI, Civil Conspiracy.  As Count V is a contract claim and not a tort, Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994), the Court presumes that inclusion of this count in Defendants' motion for summary judgment is simply an error.  Thus, the two causes of action which are the subject of Defendants' present motion include civil conspiracy and constructive discharge.

A.  Civil Conspiracy

The Tort Claims Act, NMSA 1978 § 41-4-4 *et seq.*, steers a mid-course between the harshness of sovereign immunity and a plaintiff's unregulated ability to sue governmental entities and public employees.  Governmental entities and public employees acting within the scope of their duties are exempt from liability for torts unless immunity has been expressly waived under provisions of the Act.  Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985), *reversed on other grounds*, Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986).  Suits can be brought against the governmental entities and public employees, but only in specific instances where immunity is specifically waived by the Legislature.  Id.

While there are other specific waivers under the Tort Claims Act for a variety of governmental functions or activities, there is simply no waiver of immunity for the Tapias' claims of civil conspiracy.  This tort is not mentioned in any of the express waivers.  The Legislature has not

consented to allow this claim to be asserted as a tort against the State of New Mexico or its public employees.  Finding no express waiver of immunity, the Court dismisses Tapias' civil conspiracy claims.

  B. <u>Constructive Discharge</u>

  Defendants also seek dismissal of the Tapias' constructive discharge claims, again arguing that there is no express waiver of immunity under the New Mexico Tort Claims Act.  The issue of whether various employment discrimination cases were barred by the lack of express waiver of immunity in the Tort Claims Act was laid to rest in <u>Luboyeski v. Hill</u>, 117 N.M. 380, 872 P.2d 353 (1994).  In that case, Luboyeski sought to bring a claim pursuant to the New Mexico Human Rights Act alleging unlawful employment discrimination.  Defendants, various public employees, as well as the Santa Fe Public School system, sought to dismiss the claim arguing that there was no express waiver of immunity for Luboyeski's claim in the Tort Claims Act.  The Supreme Court noted that the Human Rights Act was adopted in 1969 to eliminate "unlawful discriminatory practice[s]" and to create a comprehensive administrative scheme under which claims of discrimination could be adjudicated.  The Human Rights Act has been amended on numerous occasions since its inception.  The question before the Supreme Court was whether the adoption and subsequent modifications of the Human Rights Act served as a waiver of sovereign immunity to permit cases against the State and governmental entities.

  In construing both the Human Rights Act and the Tort Claims Act, the Supreme Court noted that the Human Rights Act referred to the State, and in a 1983 amendment, the Human Rights Act provided:

> In any action or proceeding under this section if the complainant prevails, the court in its discretion may allow actual damages and reasonable attorney fees, *and the state shall be liable the same as a private person*.  1983 N. M. Laws, Ch. 241, § 5 [*emphasis in the opinion*].

Luboyeski v. Hill, 117 N.M. at 383.

From the initial adoption of the Human Rights Act, the word "person" included "the State and all its political subdivisions."  1969 N. M. Laws, Ch. 196, § 2(A) (presently codified as § 28-1-2(A)). Id.

In reviewing two different legislative enactments in a fashion that would allow a harmonious result, the Supreme Court concluded that the Legislature's enactment of the Human Rights Act and its subsequent amendments constituted an express waiver of immunity.

> We note that the language of the exclusive-remedy provision of the Tort Claims Act, which states that the Act provides the exclusive remedy "for any tort *for which immunity has been waived under the Tort Claims Act*" does not foreclose the possibility that the Legislature also waived immunity under another act, and we conclude that this is exactly what happened:   Section 28-1-13(D) constituted and constitutes a waiver of sovereign immunity for liability imposed on public entities by the Human Rights Commission, or by a district court on appeal from a Commission decision, for violations of the Human Rights Act.

Id., at 384.

Thus, it is abundantly clear that constructive discharge claims, when they arise from unlawful employment discrimination, can be prosecuted against the State or its employees.  This is true notwithstanding the fact that the Legislature has not expressly waived immunity under the Tort Claims Act, as it has expressly waived immunity under the Human Rights Act.

This distinction, however, may not be of great assistance to Plaintiffs.  Plaintiff Pauline Tapia contends that the increased responsibilities which she contends were outside her previous duties or scope of responsibilities resulted in tension and conflict.  She states:

> The tension in the workplace was increasing as it was clear there was a "favored group" of employees in her department and she was not one of them.  She was continually left out of the planning process, was feeling extremely isolated and was singled out and criticized with

respect to tardies or the use of her phone while other employees in
similar positions were not.

(Complaint, ¶ 31).

Plaintiff does not contend that the Defendants' conduct towards her was due to her protected
status under law, i.e., her gender or ethnicity, nor does she contend that she has exhausted
administrative remedies which is a required prerequisite to filing a discrimination suit.

The Court concludes that if the constructive discharge action is predicated on a claim of
unlawful employment discrimination, and assuming satisfaction of jurisdictional prerequisites, the
motion to dismiss constructive discharge should be denied and Plaintiffs be hereby afforded twenty
days within which to file an amended complaint clearly setting out the basis of the constructive
discharge claim as unlawful employment discrimination.

Alternatively, if Plaintiffs' lawsuit is not predicated on a claimed violation of either the Human
Rights Act or Title VII of the Civil Rights Act, then the Court concurs with Defendants' claim that
there is no waiver of immunity for this claim, and Plaintiffs' claim for constructive discharge should
be dismissed.

## Contract Claims

Defendants seek to summarily dismiss the breach-of-contract claim as well as the breach of
covenant of good faith and fair dealing. The basis for Defendants' request is that there is no written
contract. The Court rejects this argument. In Barreras v. New Mexico Corrections Dept., 2003-
NMCA-027, 62 P.3d 770 (2002), the New Mexico Court of Appeals again discussed the issue of
breach of an implied contract of employment. The court stated:

> We agree with Plaintiffs that an implied contract of employment with
> a government employer may arise from writings that are sufficiently
> concrete in their representations, such as an employee handbook or
> personnel policy. *See* Garcia v. Middle Rio Grande Conservancy

8

Dist., 1996-NMSC-029, 14-20, 121 N.M. 728, 918 P.2d 7 (holding that a government employer's written personnel policy created an implied-in-fact contract sufficient to waive statutory immunity from lawsuit).

In reaching this decision, the Court of Appeals stated that State Personnel Board rules, when considered together with a State agency employee handbook, have "attributes of an employee contract" because they control the employer-employee relationship and give rise to reasonable employee expectations. New Mexico Regulation & Licensing Dept. v. Lujan, 127 N.M. 233, 238, 979 P.2d 744, 749 (Ct. App. 1999).

The evidence in this case indicates that Plaintiffs base their claim for breach of contract and their companion claim of breach of the implied covenant of good faith and fair dealing on language contained in Luna Vocational Technical Institute's Professional and Support Staff Handbook as well as oral representations made to Pauline Tapia by the president.

An implied contract of employment may well arise from both the handbook  and to the extent permitted by law.  (President Sanchez' oral statements allegedly assuring Mrs. Tapia of her job upon her return). See, e.g. Loretto Mall Partners, Inc. v. Dartford Co., N.Y., 112 N.M. 504, 508-09, 817 P.2d 238, 242-43 (1991).  Defendants dispute that there was a contract.  Thus, this issue may not be summarily resolved.  Defendants' motion for summary judgment on the contract claims is denied.

**Fourteenth Amendment Claims**

Defendants seek dismissal of Plaintiffs' constitutional claims relating to a property interest in Pauline Tapia's continued employment.  Defendants recognize that a protected property interest in employment can implicate the Due Process Clause of the Fourteenth Amendment.  Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1355-56 (10th Cir. 1997).  Defendants then argue that New Mexico law does not protect unwritten contracts in suits against government entities.

While that may be true, in the present, the Court denied Defendants' motion to dismiss the contract claims, finding that a contract of employment may arise from writings such as the employee handbook or personnel policies.  As the Court has allowed that cause of action to proceed, the Court will also deny Defendants' motion to dismiss the constitutional claims.

## **ORDER**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. 17] is granted in part and denied in part as follows:

1.  The Motion for Summary Judgment is granted as to Plaintiffs' claim for civil conspiracy.

2.  If Plaintiffs' constructive discharge claim is indeed premised on a claim of unlawful employment discrimination in violation of Title VII of the Civil Rights Act or New Mexico's Human Rights Act, Plaintiffs  must file an amended complaint within twenty days of the date of this opinion, setting out the basis of their constructive discharge claims as unlawful employment discrimination; if the claim is not premised on unlawful employment discrimination, Defendants' motion will be granted on the expiration of the twenty days to file an amended complaint; failure to do so will result in dismissal of their claim for constructive discharge; and,

3.  Defendants' Motion for Summary Judgment is denied as to Plaintiffs' claims under the Due Process Clause of the Fourteenth Amendment.

Lorenzo F. Garcia
Chief United States Magistrate Judge

ATTORNEY FOR PLAINTIFFS:
Nancy A. Richards, Esq.

ATTORNEYS FOR DEFENDANTS:
Frank R. Coppler, Esq.
Nancy E. Nickerson, Esq.